U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAR 2 2 2016

CLERK, U.S. DISTRICT COURT
By_____
Deputy

# UNITED STATES DISTRICT COURT
### for the
### Northern District of Texas

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )    Case No. 4:16-mj-187
)
One Samsung Galaxy Cell phone, cell phone number )
817-689-9984 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

One Samsung Galaxy Cell phone, cell phone number 817-689-9984 "Attachment A."

located in the _____Northern_____ District of _____Texas_____ , there is now concealed *(identify the person or describe the property to be seized)*:

Digitally stored data, to include but not limited to: text or number files, photographs, video recordings, and audio recordings

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Conspiracy to Possess Methamphetamine with Intent to Distribute |

The application is based on these facts:

See attached Affidavit.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Task Force Officer Perry Moore, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3/22/16

_____
*Judge's signature*

City and state:  Fort Worth, Texas

Jeffrey L. Cureton, U.S. Magistrate Judge
*Printed name and title*

**The facts to support a finding of Probable Cause and the issuance of a Search Warrant are as follows:**

**I,   Perry Moore, being duly sworn depose and say:**

Affiant Perry Moore is a Task Force Officer Agent employed by the Fort Worth Police Department and further assigned to the United States Drug Enforcement Administration for the past 16 years. Affiant is currently assigned to the Fort Worth Resident Office. Affiant has had numerous hours of training in the investigation of narcotics including methamphetamine trafficking and methamphetamine possession.  Affiant has had numerous hours of training in the investigation of narcotics including violations of the Controlled Substances Act.

1.   Based on my training, experience, and participation in firearms, narcotics and financial investigations involving trafficking of large amounts of methamphetamine and other controlled substances, I know:

    a.   That methamphetamine traffickers often place assets in other names and in the names of corporate entities to avoid detection and seizure of those assets by law enforcement officers.

    b.   That even though these assets are in the other person's names, the drug traffickers actually own and continue to use these assets and exercise dominion and control over them.

    c.   That large scale drug traffickers maintain on hand large amounts of United States currency in order to maintain and finance their ongoing drug business.

    d.   That drug traffickers maintain books, records, receipts, notes, ledgers, airline tickets, money orders, telephone books, address books, and other papers relating to the importation, transportation, ordering, sale, purchase, and distribution of controlled substances and containing names, nicknames, addresses and phone numbers of members of the drug trafficking organization; that the aforementioned books, records, receipts, notes, ledgers, etc., are maintained where drug traffickers have ready access to them such as in their residences and places of business.

e.   That it is common for large scale drug traffickers to secret contraband, the proceeds of drug sales, to include jewelry and records of drug transactions in secure locations for ready access and concealment from law enforcement authorities.

f.   That persons involved in drug trafficking conceal in their businesses and residences, and other secure locations, with ease of access, caches of drugs, large amounts of currency, financial instruments, precious metals, jewelry, and other items of value and/or proceeds of drug transactions; and evidence of financial transactions relating to obtaining, transferring, secreting, or spending of large sums of money from engaging in drug trafficking activities.

g.   That when drug traffickers amass large proceeds from the sale or distribution of drugs, they then attempt to legitimize these profits. That to accomplish these goals, drug traffickers utilize, including but not limited to, foreign and domestic banks and their attendant services, securities, cashier's checks, money drafts, letters of credit, shell corporations, business fronts and professional services to acquire and conceal expensive assets purchased with proceeds from controlled substances trafficking; that drug traffickers often amass large proceeds and have bank accounts, brokerage accounts, and records of off-site locations to store records, including safe deposit keys, records and receipts, rental agreements for storage facilities, records of mail and answering services including telephone pagers, and that such items are secured within their residences and businesses for easy access; or in nearby residences of their drug trafficking associates and/or relatives and that drug traffickers retain these records for a long period of time, often in excess of a year.

h.   That individuals who are prohibited from lawfully possessing firearms and ammunition, often maintain possession of their illegally possessed firearms and ammunition for long periods of time, often in excess of one (1) year.

i.   That individuals who are prohibited from lawfully possessing firearms and ammunition, often have their firearms and ammunition stored at their residences, on their property and/or in the vehicles they routinely drive.

2.      Further, based upon my training and participation in these types of investigations in the United States, I know that individuals who engage in the trafficking of illegal controlled substances and monies laundered therein, acquire and keep in their residences and businesses documents and other evidence of their illegal activities, including the following:

    a.      Scales and weighing devices, measuring devices and containers and paraphernalia.

    b.      Books, records receipts, bills of lading, notes, ledgers, and other papers relating to the transportation, ordering, purchase and distribution of controlled substances, in particular, methamphetamine, a Schedule I Controlled Substance.

    c.      Papers, tickets, notes, schedules, receipts, and other items relating to domestic and international travel.

    d.      Books, records, telephone books, address books, receipts, bank statements and records, money drafts, letters of credit, money order and cashier's checks, passbooks, bank checks, safe deposit box keys, codes, encryption information, documents reflecting the manner and means to access encrypted entries, computer information stored by means of electronic or magnetic devices, including but not limited to, floppy disks, CD ROM, hard drives, back-up hard drives and tapes, as well as printouts or readouts from any magnetic or electronic storage, and other items evidencing the names, nicknames, addresses, phone numbers of members of the drug trafficking organization and evidencing the obtaining, secreting, transfer, and/or concealment of assets and the obtaining, secreting, transfer, concealment and/or expenditure of money.

    e.      United States currency, precious metals, jewelry, and financial instruments, including stocks and bonds in amounts indicative of the proceeds of illegal controlled substances trafficking.

    f.      Photographs, in particular, photographs of co-conspirators, of assets, firearms, ammunition and/or controlled substances, in particular methamphetamine.

g.   Indicia of occupancy, residency, and/or ownership of the premises, including their businesses and residences, which includes but is not limited to, utility and telephone bills, canceled envelopes, keys and documents reflecting the manner and means of the purchase of the property.

h.   Telephone bills, cellular telephones, telephone note pads and notes, contracts, and other documents reflecting the ownership, subscription information, and the use of the telephones, which are often used by large scale controlled substances traffickers as a tool of the trade.

i.   Computer hardware, software, peripheral devices, documentation, data security devices and electronic storage devices as necessary to search for and seize the items described above.

3.   Based upon my knowledge, training and experience, and consultations with other Special Agents who have specialized training in the area of computers, I know that searching and seizing information from computers often requires agents to seize most or all electronic storage devices (along with related peripherals) to be searched later by a qualified computer expert in a controlled environment. This is true because of the following:

a.   Computer storage devices (like hard drives, diskettes, tapes, laser disks) can store the equivalent of thousands of pages of information. It may require the searching authorities to examine all the stored data to determine which particular file(s) are evidence of a crime. This sorting process takes a great deal of time and it would be impractical to attempt this kind of data search on site.

b.   Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. Since computer evidence is extremely vulnerable to inadvertent or intentional modification or destruction, a controlled environment is essential to its complete and accurate analysis.

c.

4.   Based upon my knowledge, training and experience, and consultations with other special agents, I know that searching computerized information for evidence of a crime commonly requires agents to seize computer hardware and most or all of a computer system's input/output peripheral devices, related software,

documentation, and data security devices (including passwords) so that a qualified computer expert can accurately retrieve the system's data in a controlled environment. This is true because of the following:

a.  The hardware and peripheral devices which allow users to enter or retrieve data from the storage devices vary widely in their compatibility with other hardware and software. Many system storage devices require particular input/output (or "I/O") devices in order to read the data on the system. It is important that the analyst be able to properly re-configure the system as it now operates in order to accurately retrieve the evidence listed above. In addition, the analyst needs the relevant system software (operating systems, interfaces, and hardware drivers) and any applications software which may have been used to create the data, as well as all related instruction manuals or other documentation and data security devices.

b.  If, after inspecting the hardware, I/O devices, software, documentation, and data security devices, the analyst determines that these items are no longer necessary to retrieve and preserve the data evidence, the government will return them within a reasonable time.

Based on information provided in this Affidavit, I believe there is probable cause to support the issuance of search warrant for the cellular telephones listed in "Attachment A," located in the possession of Law Enforcement, in the Northern District of Texas. This affidavit is offered in support of an application seeking authorization to search said cellular telephones. Based on the following information, there is probable cause to believe that said cellular telephones, contain digital evidence of violations of the following sections of 21 U.S.C. §§ 841(a)(1) & 846.

5.  In December of 2014, Agents/Officers received information that Lee Fogle was then currently trafficking multiple pound quantities of crystal methamphetamine in the Fort Worth, Texas, area.

6.      On February 11, 2016, members of the Fort Worth Police Department were
conducting surveillance on a residence located at 4412 Fletcher Ave., in Fort
Worth, Texas. Officers were attempting to arrest Lee Fogle for his outstanding
State of Texas warrants for Possession of a Controlled Substance and Unlawfully
Carrying a Weapon by a Felon. Officers observed Lee Fogle exit from the
residence located at 4412 Fletcher Ave. in Fort Worth, Texas, with two white
females later identified as Laurie Flynn and Lindsey Carlson. Officers then
observed Laurie Flynn enter the driver seat of a black Chevrolet Suburban, Lee
Fogle entered the front passenger seat, and Lindsey Carlson enter the back
passenger seat of the vehicle. Officers then observed Laurie Flynn, Lee Fogle,
and Lindsey Carlson depart from the residence located at 4412 Fletcher Ave. in
Fort Worth, Texas. Fort Worth Police Department Officers, in marked police
units, then attempted to conduct a traffic stop of the vehicle occupied by Laurie
Flynn, Lee Fogle, and Lindsey Carlson. Laurie Flynn then led the members of the
Fort Worth Police Department on a vehicle pursuit for approximately fifteen
minutes and sixteen miles. Officers detained Laurie Flynn, Lee Fogle, and
Lindsey Carlson after they fled on foot from the black Chevrolet Suburban.
During the pursuit of the black Chevrolet Suburban, Officers observed the front
passenger, Lee Fogle, throw a small tin can from the vehicle. Officers later
recovered the tin can, which contained approximately 12.5 grams of crystal
methamphetamine. Officers located and seized one Samsung Galaxy Cell phone,
cell phone number 817-689-9984, from Lee Fogle.

7.    Affiant believes that there is information in Lee Fogle's cell phone, one Samsung Galaxy Cell phone, cell phone number 817-689-9984, related to the above mentioned crimes.

_____
Task Force Officer Perry Moore
DEA


Sworn to and subscribed before me on this 22nd day of March, 2016 at $10:02$ a.m/p.m in Fort Worth, Texas.

_____
JEFFREY L. CURETON
United States Magistrate Judge

**Affidavit in Support of Application for Search Warrant - Page 7 of 7**

## Attachment "A"

1. One Samsung Galaxy Cell phone, cell phone number 817-689-9984